UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
ATL CORPORATION,                    )
                                    )
                    Plaintiff,   )   No. C09-1240RSL
    v.                            )
                                    )   ORDER REGARDING CROSS-
CITY OF SEATTLE,                    )   MOTIONS FOR SUMMARY
                                    )   JUDGMENT
                    Defendant.   )
_____)

This matter comes before the Court on "Plaintiff's Motion for Partial Summary Judgment" (Dkt. # 17) and the "City of Seattle's Cross-Motion for Partial Summary Judgment" (Dkt. # 28). Plaintiff seeks a summary determination that Seattle Municipal Code ("SMC") 6.270.090 and 23.47A.004.H are unconstitutional on their faces under the First Amendment of the United States Constitution insofar as they grant City employees unbridled discretion to delay, and thereby prohibit, protected speech.[1] Plaintiff also seeks a declaration that the dispersion requirements of SMC 23.47A.004.H impermissibly restrict the avenues of communication open to plaintiff. Defendant filed a cross-motion for summary judgment on the facial constitutionality of its licensing and zoning ordinances.

---

[1] Plaintiff asserts that there is "no prompt avenue for judicial review" at various points in its memoranda. See Motion at 16; Reply at 2. Plaintiff has not, however, provided any factual or legal analysis that could support a finding that the state's judicial review procedures are unconstitutional, and the Court will not undertake the analysis *sua sponte*.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT

Summary judgment is appropriate where admissible evidence, read in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact that would preclude entry of judgment in favor of the moving party. Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003). The parties agree that the relevant facts related to plaintiff's facial challenges are not in dispute.[2] Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[3] the Court finds as follows:

## BACKGROUND

Between 1988 and 2005, the City of Seattle enforced a moratorium on the issuance of building permits for adult cabarets. On September 12, 2005, the moratorium was struck down as an unconstitutional prior restraint on protected speech. ASF, Inc. v. City of Seattle, 408 F. Supp.2d 1102 (W.D. Wash. 2005). The City now regulates adult entertainment businesses through licensing and dispersion requirements. The licensing ordinance, SMC 6.270.090, states:

> A. After an investigation, the Director shall issue the applicable license or licenses authorized by this chapter if the Director finds:
>
> 1. That the business for which a license is required herein will be conducted in a building, structure and location which complies with the requirements and meets the standards of the applicable health, zoning, building, fire and safety laws of the State, the ordinances of the City, as well as the requirement of this chapter;
>
> 2. That the applicant, his or her employee, agent, partner, director, officer, stockholder or manager has not knowingly made any false, misleading or fraudulent statement of material fact in the application for a license, or in any report or record required to be filed with the Director;

---

[2] The facial validity of the ordinances can be decided without reference to the details of plaintiff's applications and/or its communications with defendant. The parties, however, provided multiple declarations and exhibits for the Court's review and have drawn starkly different conclusions regarding the cause of the delay in this case. Stripped of accusatory clauses and conclusory allegations, the facts giving rise to this dispute are set forth below.

[3] Defendant has withdrawn its request for oral argument.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                -2-

>    3. That the applicant, and all employees, agents, partners, directors, officers, or managers of the applicant have attained the age of eighteen (18) years.

The applicable dispersion ordinance, SMC 23.47A.004.H, states:

>    H. Adult Cabarets.
>
>    1. Any lot line of property containing any proposed new or expanding adult cabaret must be 800 feet or more from any lot line of property on which any of the following uses has been established by permit or otherwise recognized as a legally established use:  community center; child care center; school, elementary or secondary; or public parks and open space use.
>
>    2. Any lot line of property containing any proposed new or expanding adult cabaret must be 600 feet or more from any lot line of property for which a permit has been issued for any other adult cabaret.
>
>    3. The dispersion analysis required by subsections 23.47A.004.H.1 and 2 shall be based on the facts that exist on the earlier of:
>
>       a) the date a complete application for a building permit for an adult cabaret for the property proposed to contain the new or expanding adult cabaret is made, or
>
>       b) the date of publication of notice of the Director's decision on the Master Use Permit application to establish or expand an adult cabaret use, if the decision can be appealed to the Hearing Examiner, or the date of the Director's decision if no Hearing Examiner appeal is available.

On February 8, 2008, plaintiff submitted an application for an adult entertainment premises license under SMC Chapter 6.270.  Plaintiff was told that, pursuant to the terms of SMC 6.270.090(A)(1), he would have to show compliance with zoning, building, fire, safety, and health laws by obtaining all applicable permits.  Decl. of Jackie Mitchell (Dkt. # 23), Ex. A. On April 8, 2008, plaintiff contacted the Department of Planning and Development ("DPD") inquiring whether the proposed location qualified for an adult entertainment premises license. Decl. of Robert Davis (Dkt. # 18), Ex. 3.  In the absence of an actual zoning or building permit

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                      -3-

application, DPD responded that the property was in a C1-40 zone where adult cabarets were permitted if the dispersion requirements of SMC 23.47A.044.H were met. DPD noted that its computerized records did not identify any prohibited uses in the vicinity of the property, but specifically declined to perform an exhaustive record search or make a final determination regarding the dispersion criteria absent a pending zoning or building permit application. Decl. of Andrew S. McKim (Dkt. # 22), Ex. A.

On June 25, 2008, plaintiff submitted a second application for an adult entertainment premises license under SMC Chapter 6.270. Decl. of Robert Davis (Dkt. # 18), Ex. 5. Plaintiff was again told that he would have to show compliance with zoning, building, fire, safety, and health laws before the license could issue. Decl. of Robert Davis (Dkt. # 18), Ex. 6. Plaintiff, through counsel, contacted the City Attorney's Office, pointing out that the refusal to grant or deny the adult entertainment premises license in a timely manner was suppressing plaintiff's protected speech. Decl. of Kristin G. Olson (Dkt. # 19), Ex. 7. On August 25, 2008, the City agreed to issue the adult entertainment license, but made it clear that a number of other approvals had to be obtained before plaintiff could lawfully operate a strip club at the proposed location. Decl. of Kristin G. Olson (Dkt. # 19), Ex. 8. In particular, the City reminded plaintiff that the dispersion requirements of SMC 23.47A.004.H had to be satisfied. Shortly thereafter, the City adopted a policy requiring the issuance of an adult entertainment premises license within thirty days of receiving a completed application, license fee, and required information, even if the applicant had not yet obtained all necessary health, zoning, building, fire, or safety permits. Decl. of Denise Movius (Dkt. # 24) at ¶ 9.

On December 31, 2008, plaintiff contacted DPD to determine what permits would be necessary in order to add a stage to the existing restaurant facility. Plaintiff was told that the project would require a permit, but that "no change of use" was required. Decl. of Judy Singh (Dkt. # 27), Ex. A. During the first two weeks of January, plaintiff sought additional information from DPD and was informed that he needed to provide three sets of drawings

1  showing the existing and proposed layouts so that the occupant load could be calculated, that an
2  architect's stamp would not be required if the changes were non-structural and valued at less
3  than $30,000, and that the stage had to be accessible. Id.  At some point between January 16,
4  2009, and January 21, 2009, the "neighborhood" surrounding the proposed facility informed
5  DPD that plaintiff was planning to open an adult cabaret at the proposed location and that there
6  were incompatible uses in the immediate vicinity. Id.  On January 21, 2009, DPD personnel
7  were instructed that "if the project is an adult cabaret, project must meet dispersion criteria . . . .
8  Project should not be accepted at intake without documentation regarding dispersion, or a
9  written statement on the plans documented [sic] that this permit will not include approval of an
10 adult cabaret." Id.

11 Plaintiff's initial remodel plans were rejected on January 23, 2009, because the
12 dispersion criteria were not addressed.  DPD provided information regarding how to make
13 measurements for purposes of the dispersion criteria and requested additional changes to the
14 plans regarding construction and safety details.  Decl. of Judy Singh (Dkt. # 27), Ex. A.
15 Plaintiff resubmitted its plans on February 9, 2009.  Plaintiff asserted that two potentially
16 problematic facilities in the vicinity of the property were not actually inconsistent uses under the
17 dispersion criteria, but DPD disagreed.  It concluded that plaintiff had not demonstrated
18 compliance with the dispersion requirements and again rejected the plans. Id.  Plaintiff again
19 enlisted the assistance of his attorney, who successfully argued that DPD's refusal to accept
20 plaintiff's permit application was an unconstitutional prior restraint on protected speech.  Decl.
21 of Kristin Olson (Dkt. # 19), Ex. 10.  DPD staff were instructed to accept plaintiff's application
22 for an adult cabaret if it met the submittal requirements and included a representation that the
23 applicant believed the dispersion requirements were satisfied.  Decl. of Judy Singh (Dkt. # 27),
24 Ex. A.

25 When plaintiff submitted his plans for a third time on August 18, 2009, they were
26 accepted by DPD.  The application to establish a new adult cabaret at 10507 Aurora Avenue

North was denied, however, on September 1, 2009, on the ground that a facility with a day care center permit was located 742 feet east of the property and a facility in which another adult cabaret was licensed to operate was located 342 feet from the property. Decl. of Kristin Olson (Dkt. # 19), Ex. 15. These prior uses had been permitted in 1971 and 1989, respectively, but are not currently operating.

## DISCUSSION

### I. UNBRIDLED DISCRETION

The right to open and operate an adult cabaret featuring topless, exotic, or nude dancing is protected speech under the First Amendment. Young v. City of Simi Valley, 216 F.3d 807, 815 (9th Cir. 2000). Cities are permitted to impose time, place, and manner restrictions on such speech in order to "combat the undesirable secondary effects" of adult businesses (City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 49 (1986)), but certain procedural safeguards must be in place to ensure that the government does not have unbridled discretion to suppress the protected speech (Jersey's All-American Sports Bar, Inc. v. Wash. State Liquor Control Bd., 55 F. Supp.2d 1131, 1138 (W.D. Wash. 1999)). A permitting scheme "that fails to place limits on the time within which the decisionmaker must issue the license is impermissible" because it creates the possibility of suppression through delay. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 227 (1990).

### A. SMC 6.270.090

Defendant argues that SMC Title 6 does not confine the time within which the government must make a decision regarding an application for an adult entertainment premises license.[4] The City argues that the thirty-day policy it adopted on August 27, 2008, brings SMC 6.270.090 into compliance with the constitutional requirements discussed above. According to the Director of Revenue and Consumer Affairs for the Seattle Department of Executive

---

[4] SMC 6.202.150 allows the Director of Executive Administration to act on an application within thirty days, but it does not require action within that time frame.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                -6-

Administration, after consultation with counsel she adopted a policy that the City shall

> issue adult entertainment premises licenses when applicants have paid the license fee and provided the information required under SMC 6.270.070.A, and in any event, within 30 days after receiving a completed application, even if the applicant has failed to show that the premises complies with the requirements and meets the standards of the applicable health, zoning, building, fire and safety laws of the State [and] the ordinances of the City.

Decl. of Denise Movius (Dkt. # 24) at ¶ 9. Because the City is claiming that it will adhere to limitations that are absent from the ordinance's face, it must show that the limits are "made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 770 (1988).

The City has not met its burden. SMC 6.270.090 has not been modified to incorporate the Director's policy statement, nor can the policy, which purports to add entirely new limitations to the ordinance, be described as a construction of SMC 6.270.090. Rather, the City is relying on a newly-minted policy which it implies, but does not actually argue, is binding. The only evidence of the August 27, 2008, policy is the declaration of Denise Movius. There is no indication that the policy has been reduced to writing, has been published or otherwise communicated to the appropriate regulatory employees, has been followed in subsequent application proceedings, or is known to or enforceable by members of the public. It is impossible to conclude that "a well-understood and uniformly applied practice has developed that has virtually the force of a judicial construction" in this case. City of Lakewood, 486 U.S. at 770 n. 11. Plaintiff's First Amendment rights should not depend on what is essentially a promise to act promptly in the future.

**B. SMC 23.47A.004.H**

Contrary to plaintiff's assertion (motion at 21), the Seattle Land Use Code contains a 120-day time limit governing the dispersion analysis under SMC 23.47A.004.H. See SMC 23.76.005. Plaintiff does not acknowledge this time limit and has not attempted to show that it is

unreasonably long for First Amendment purposes.

**II. REASONABLE ALTERNATIVE AVENUES**

Municipalities may regulate the location of adult businesses as long as the regulations "are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." City of Renton, 475 U.S. at 46-47.  Plaintiff argues that SMC 23.47A.004.H effectively denies plaintiff a reasonable opportunity to open and operate within the City limits because only .62% of the City's total land area is available for development as adult cabarets.

Plaintiff's argument is based entirely on the percentage of land available for development and ignores all other relevant factors. In determining whether SMC 23.47A.004.H is constitutional on its face, the Court must perform a fact-specific inquiry regarding the number of potential sites, the current demand for adult businesses, the chilling effect of existing permitting schemes, the percentage of acreage available for development, the particular characteristics of Seattle and its population, the effects of regulation in comparable communities, and any other factors bearing on whether a proposed business has a reasonable opportunity to open and operate. Simi Valley, 216 F.3d at 822.

During the 1980s, Seattle had between two and seven adult cabarets operating within the city limits. Decl. of Robert Davis (Dkt. # 33), Ex. C. When the moratorium ended in September 2005, there were four operating strip clubs, and the then-existing zoning regulations did not require buffers of any kind. Between September 2005 and June 2007 (when SMC 23.47A.004.H was enacted), the City received as many as four applications for strip club licenses. Decl. of Martha Lester (Dkt. # 21), Ex. C (letter from Mayor Greg Nickels dated June 27, 2007). But see Id., Ex. H (finding that no applications were submitted between 2004 and June 2007). The City received two more applications for adult land use approvals after SMC 23.47A.004.H took effect. One of these applications was plaintiff's. Decl. of Andrew McKim (Dkt. # 22) at ¶ 3. Based on this history, and in particular the influx of applications when the

unconstitutional moratorium was lifted, it is reasonable to conclude that the demand for adult speech in Seattle would support more than the four businesses that were operating as of September 2005.

Before enacting SMC 23.47A.004.H, the City considered two very different zoning schemes. One of the schemes would have confined all new adult cabarets to the Duwamish Manufacturing and Industrial Center and imposed a 1000 foot sensitive use buffer. The other would allow adult cabarets throughout the City but would impose sensitive use and adult use buffers. After hearing from DPD and taking public comment, the City Council concluded that wholesale change to the zoning regulations could not be justified and therefore focused on the second option. The Council analyzed existing land use and permitting information, examined buffers used by other municipalities (both local and national), evaluated the demand for sexual speech in Seattle, and prepared maps depicting estimated areas that would be potentially available for adult uses if buffers of 600, 800, or 1,000 feet were adopted. Decl. of Martha Lester (Dkt. # 21) at ¶¶ 6-14.

After considering most, if not all, of the factors deemed relevant to the "reasonable alternative avenues" analysis, the City concluded that as many as four new adult cabarets might open in Seattle in the foreseeable future, thereby doubling the number of cabarets that were in operation when the moratorium was lifted. This conclusion was not unreasonable: it is consistent with the application history described above, takes into account the suppressing effects of the unconstitutional moratorium, and reflects the demand for strip clubs in light of the alcohol prohibition set forth in WAC 314-11-050. In addition, although the City believed that four new facilities were not likely to open, it chose to enact a zoning ordinance that would "allow for a larger number of viable locations for the location of new strip clubs" because of the constitutional constraints at issue in this case. Decl. of Martha Lester (Dkt. # 21) Ex. H at 2.

In light of the impact different sized buffers had on the number of parcels available, the City settled on an 800 foot sensitive use buffer and a 600 foot adult use buffer.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                -9-

Given these dimensions and the effects of other relevant zoning laws, the City concluded that there were over 1000 privately-held parcels of land covering over 300 acres available throughout the City that could accommodate new adult cabarets. Decl. of Martha Lester (Dkt. # 21) at ¶ 19 and Ex. H. The available parcels are highlighted in yellow on a map prepared by DPD on May 23, 2007. Decl. of Kristin G. Olson (Dkt. # 34), Ex. 4.

      Having reviewed the map and being generally familiar with the neighborhoods depicted thereon, the Court finds that the City has proposed a large number of potential sites that are part of the relevant real estate market, are easily accessible to the general public, and include both undeveloped and developed properties. Decl. of Kristin G. Olson (Dkt. # 34), Ex. 4. Because the City has come forward with a reasonable list or depiction of sites available for plaintiff's speech, the burden of demonstrating that the sites are inadequate or not truly available shifts to plaintiff. Tollis, Inc. v. County of San Diego, 505 F.3d 935, 941 (9th Cir. 2007). Plaintiff suggests that some of the parcels of land identified by the City are publicly owned or otherwise are not actually available for adult cabarets (Reply at 7 n.13), but it makes no effort to support this contention. Plaintiff does, however, persuasively argue that the number of available parcels is inflated because any new adult cabaret that opens within the City will make unavailable parcels within 600 feet of the new business. Even if the Court assumes that only one new cabaret could be sited in each of the separate yellow areas on the map (an unwarranted assumption given that many of the yellow swatches extend along arterials and could easily contain more than one adult use), there is space for at least seventy-five new adult cabarets within the City limits. Thus, the number of alternative sites, even if reduced by the opening of a handful of new cabarets, is more than sufficient to meet the existing or foreseeable demand for sexual speech in Seattle. Tollis, Inc. v. County of San Diego, 505 F.3d 935, 942 (9th Cir. 2007). The City has, therefore, afforded plaintiff a reasonable number of alternative sites for its protected speech.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion for summary judgment (Dkt. # 17) and defendant's cross-motion (Dkt. # 28) are GRANTED in part and DENIED in part. The dispersion requirements of SMC 23.47A.004.H do not unreasonably restrict the avenues of communication available to plaintiff and are facially constitutional. SMC 6.270.090, on the other hand, is unconstitutional on its face. The provisions of SMC Chapter 6.270 requiring an adult entertainment premises license are hereby severed and invalidated because they have no reasonable time limits. The ordinance's other provisions, including, but not limited to, the standards of conduct, disclosure requirements, and operational requirements, remain intact.

DATED this 19th day of July, 2010.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge