1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                                    )
ATL CORPORATION,                                   )
                                                                    )          No. C09-1240RSL
                                  Plaintiff,             )
                                                                    )
          v.                                                       )
                                                                    )          SECOND ORDER REGARDING
CITY OF SEATTLE,                                      )          CROSS-MOTIONS FOR
                                                                    )          SUMMARY JUDGMENT
                                  Defendant.         )
_____)

          This matter comes before the Court on "Plaintiff's Motion for Partial Summary

Judgment" (Dkt. # 68) and the "City of Seattle's Cross-Motion for Partial Summary Judgment"

(Dkt. # 69).  Summary judgment is appropriate where admissible evidence, read in the light most

favorable to the non-moving party, shows that there is no genuine issue of material fact that

would preclude entry of judgment in favor of the moving party.  Bruce v. Ylst, 351 F.3d 1283,

1287 (9th Cir. 2003).  The parties agree that the facts related to plaintiff's First Amendment

challenges to SMC 23.47A.004(H) are not in dispute.[1]  Having reviewed the memoranda,

declarations, and exhibits submitted by the parties, and having heard the arguments of counsel,

the Court finds as follows:

_____

          [1] Other than one sentence in the City's reply memorandum (Dkt. # 79 at 18), the parties have not
addressed issues related to damages.

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT

# BACKGROUND

The City of Seattle regulates adult entertainment businesses through licensing and permitting requirements.[2]  Plaintiff alleges that one of the factors considered when issuing a building or land use permit, the dispersion requirement of SMC 23.47A.004.H, is unconstitutional on its face because the deadline for making a decision is unreasonably long, that the ordinance was applied in an unconstitutional manner when the City refused to accept plaintiff's application for a permit when originally tendered, and that the ordinance is not narrowly tailored to serve a significant government interest.

In early 2009, plaintiff sought permission to remodel a building located at 10504 Aurora Avenue North.  At the time, the relevant portions of the City's commercial zoning and land use ordinance stated:

H.  Adult Cabarets.

1.  Any lot line of property containing any proposed new or expanding adult cabaret must be eight hundred (800) feet or more from any lot line of property containing any community center; child care center; school, elementary or secondary; or public parks and open space use.

2.  Any lot line of property containing any proposed new or expanding adult cabaret must be six hundred (600) feet or more from any lot line of property containing any other adult cabaret.

SMC 23.47A.004.H.  Although the dispersion requirement does not contain its own deadline for

---

[2]  Earlier in this litigation, the licensing requirement contained in SMC 6.270.090 was struck down because the ordinance did not contain a time limit within which the government was required to make a decision on a license application.  The Court found that, in the absence of a deadline for government action, the ordinance granted unbridled discretion to the City to delay, and thereby prohibit, speech protected by the First Amendment of the United States Constitution.  The requirement that an adult entertainment business obtain a license was therefore invalidated and severed.  The ordinance's other provisions, including, but not limited to, the standards of conduct, disclosure requirements, and operational requirements, were left intact and are not at issue in this motion.  "Order Regarding Cross-Motions for Summary Judgment," Dkt. # 43 at 6-7 and 11 (dated July 19, 2010).

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT                    -2-

government action, the City has imposed a default 120 day time limit in which to rule on all land use applications.  SMC 23.76.005.  The time limit is part of a larger effort to integrate, consolidate, and expedite the land use permitting process to avoid redundancy, minimize delays, and reduce the cost of development.  SMC 23.76.002.

On December 31, 2008, plaintiff contacted the City's Department of Planning and Development ("DPD")  to determine what land use permits would be necessary in order to add a stage to an existing restaurant facility at 10504 Aurora Avenue North.  Plaintiff was told which permits would be required and what information had to be submitted.  Decl. of Judy Singh (Dkt. # 27), Ex. A.  At some point in mid-January 2009, the "neighborhood" surrounding the proposed facility informed DPD that plaintiff was planning to open an adult cabaret at the facility and that there were incompatible uses in the immediate vicinity.  Id.  When plaintiff attempted to file a building permit application for the proposed remodel on January 23, 2009, DPD refused to accept the application because the dispersion criteria of SMC 23.47A.004.H had not been addressed.   DPD provided information regarding how to make measurements for purposes of the dispersion criteria and requested additional changes to the plans regarding construction and safety details.  Id.  Plaintiff attempted to resubmit its plans on February 9, 2009, asserting that two potentially problematic facilities in the vicinity of the property were not actually inconsistent uses under the dispersion criteria.  DPD disagreed and again rejected the plans on the ground that plaintiff had not demonstrated compliance with the dispersion requirements.  Id.  In July 2009, plaintiff's counsel contacted the City and successfully argued that DPD's refusal to accept plaintiff's permit application was an unconstitutional prior restraint on protected speech.  Decl. of Kristin Olson (Dkt. # 19), Ex. 10.  DPD staff were instructed to accept plaintiff's application for an adult cabaret if it met the submittal requirements and included a representation that the applicant believed the dispersion requirements were satisfied.  Decl. of Judy Singh (Dkt. # 27), Ex. A.

When plaintiff submitted its permit application for a third time on August 18,

1  2009, it was accepted by DPD.  The application to establish a new adult cabaret at 10507 Aurora

2  Avenue North was denied, however, on September 1, 2009.  DPD's review of the permit history

3  for the properties identified by the neighbors showed that a facility with a day care center permit

4  was located 742 feet east of the property and that a facility in which another adult cabaret was

5  permitted to operate was located 342 feet from the property.  Decl. of Kristin Olson (Dkt. # 19),

6  Ex. 15.  These prior uses had been permitted in 1971 and 1989, respectively, but were not

7  operating at the time plaintiff applied for its building permit.[3]

8                                      **DISCUSSION**

9  **I. UNBRIDLED DISCRETION**

10            The right to open and operate an adult cabaret featuring topless, exotic, or nude

11  dancing is protected speech under the First Amendment.  Young v. City of Simi Valley, 216

12  F.3d 807, 815 (9th Cir. 2000).  Cities are permitted to impose time, place, and manner

13  restrictions on such speech in order to "combat the undesirable secondary effects" of adult

14  businesses (City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 49 (1986)), but certain

15  procedural safeguards must be in place to ensure that the government does not have unbridled

16  discretion to suppress the protected speech (Jersey's All-American Sports Bar, Inc. v. Wash.

17  State Liquor Control Bd., 55 F. Supp.2d 1131, 1138 (W.D. Wash. 1999)).  A permitting scheme

18  "that fails to place limits on the time within which the decisionmaker must issue the license is

19  impermissible" because it creates the possibility of suppression through delay.  FW/PBS, Inc. v.

20  City of Dallas, 493 U.S. 215, 227 (1990).

21            SMC 23.47A.004.H does not confine the time within which the government must

22  make a decision regarding compliance with the dispersion criteria.  The City argues that the

23  default 120-day deadline contained in SMC 23.76.005 brings SMC 23.47A.004.H into

24  compliance with the constitutional requirements discussed above by limiting the municipality's

25

26            [3]  The adult cabaret has since reopened its doors and is again in operation.

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT            -4-

1   ability to delay protected speech.

2       **A. Facial Challenge**

3           In its motion, plaintiff asserts that SMC 23.47A.004.H is unconstitutional both on

4   its face and as applied.  Motion (Dkt. # 65) at 18-19.  Plaintiff subsequently acknowledged,

5   however, that the 120-day deadline is not always unreasonable:  "ATL is not arguing that just

6   because a project is subject to First Amendment protection, that a decision on a construction

7   permit for a large and complex project, such as a downtown skyscraper must be made within 120

8   days or that SMC 23.76.005 by itself is unconstitutional."  Reply (Dkt. # 72) at 5 (internal

9   quotation marks and footnote omitted).  The difference between a facial and an as-applied

10  challenge is the scope of the remedy.  A successful facial challenge will result in a finding that a

11  particular law can never be validly enforced, whereas a successful as-applied challenge will

12  prevent the law from being enforced in some, but not all, circumstances.  See, e.g., 4805

13  Convoy, Inc. v. City of San Diego, 183 F.3d 1108, 1111 (9th Cir. 1999).  Having conceded that

14  the government would, in some circumstances, need 120-days to conduct a dispersion analysis as

15  part of a large-scale project, plaintiff is not entitled to a declaration that SMC 23.47A.004.H is

16  unconstitutional on its face.

17          At oral argument, plaintiff took the position that, because it plans to engage in First

18  Amendment protected activities, the City should be required to perform the dispersion analysis

19  of SMC 23.47A.004H in less than 120 days.  The existence of inconsistent uses is simply one

20  factor that must be considered when a property owner requests a land use permit from the City of

21  Seattle.  The City has developed an "integrated and consolidated land use permit process" (SMC

22  23.76.002) designed to ameliorate the delays, conflicts, and duplication that arose when local

23  and state authorities required a number of separate land use permits and environmental reviews

24  for a single project (RCW 36.70B.010).  Plaintiff apparently wants the Court to undo the

25  consolidated process so that the dispersion analysis has its own application process and review

26  deadline.  Plaintiff offers no authority for its underlying assumption that it is entitled to an

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT            -5-

expedited and/or separate permit process simply because a First Amendment activity is at issue. Courts have upheld municipal regulations that combine adult licensure, building permit, and health, fire, and zoning reviews. See Redner v. Dean, 29 F.3d 1495, 1497-98, 1501 (11th Cir. 1994). In addition, a permit scheme that "applies reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display" is unlikely to suppress protected speech in the community and does not require accelerated consideration. See City of Littleton, Colo. v. Z.J. Gifts D-4, LLC, 541 U.S. 774, 783, 787 (2004). Thus, the City is not required to provide a separate application process or expedited review for projects that are subject to the dispersal requirements of SMC 23.47A.004(H).

To the extent plaintiff is arguing that 120 days is an unreasonably long period of time in which to consider a consolidated land use permit application, the Court finds that plaintiff is collaterally estopped from re-litigating the facial validity of the 120-day permit processing deadline. The Honorable Suzanne Barnett of the King County Superior Court addressed precisely this issue on March 11, 2011, resulting in a final judgment in the City's favor. City of Seattle v. Robert A. Davis, et al., C11-2-04927-SEA. ATL, the plaintiff in this matter, is controlled by Robert Davis, a named party in the state court litigation. Despite the fact that this litigation was pending long before the City initiated its enforcement action before Judge Barnett, the application of the doctrine of collateral estoppel will not work an injustice on plaintiff. Through its president and sister corporation, plaintiff had a full and fair opportunity to litigate its facial challenge in state court and was unsuccessful. Considerations of comity, consistency, and efficiency support the application of collateral estoppel: plaintiff may not seek a different result in this litigation.[4]

---

[4] In the alternative, the Court finds that a four month period in which to evaluate all of the permitting issues that arise from a given project is not unreasonable. Plaintiff's facial challenge fails as a matter of law and of fact.

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT                    -6-

1

**B. As Applied Challenge**

2   Plaintiff's as-applied challenge is based on the fact that the City refused to make a

3   relatively simple dispersion determination for over six months, thereby suppressing plaintiff's

4   protected speech for an extended and, in the circumstances presented here, unreasonable period

5   of time.  The Court agrees.  Even if one assumes that the City properly rejected plaintiff's

6   building permit application in January 2009 because the application was not complete, once

7   plaintiff addressed the dispersion criteria, the application should have been accepted and ruled

8   upon in a timely fashion.  By rejecting the application, the City effectively prevented a decision

9   on the merits, thereby barring plaintiff's speech without ever evaluating the time, place, and

10  manner in which the speech would be offered.  Having failed to conduct the required dispersion

11  analysis, the City had no basis for restraining plaintiff's proposed speech .[5]

12

---

13  [5]  The City argues that plaintiff is responsible for much, if not all, of the delay in considering

14  plaintiff's building permit application.  As recounted above, plaintiff submitted an application for a
    building permit in February 2009.  Instead of identifying a deficiency or making a determination on the

15  application, the City refused to accept the submission, thereby depriving plaintiff of both a decision and
    the normal land use appeal processes.  It is not clear whether the City is arguing that (a) plaintiff should

16  have submitted its application over and over again until it was accepted by DPD or (b) plaintiff should
    have enlisted the services of its attorney more quickly.  An applicant should not have to repeatedly ask a

17  municipality to follow its own ordinances, nor should it have to enlist the services of a lawyer or file a
    lawsuit in order to obtain a land use decision.  The City's attempt to impose such duties on plaintiff is

18  unavailing.

19      At oral argument, the City for the first time argued that its rejection of the February 2009
    application was actually an acceptance, review, and denial of the permit application.  There is no

20  evidence to support this interpretation of the facts.  The record shows that intake was told in mid-
    January that the "[p]roject should not be accepted at intake without documentation regarding dispersion,

21  or a written statement on the plans documented that this permit will not include approval of an adult

22  cabaret."  Decl. of Robert Davis (Dkt. # 66), Ex. A at 7.  Consistent with those instructions, the
    "[p]roposal was not taken in at intake" on January 23, 2009 and was "rejected" on February 9, 2009,

23  because the applicant had not demonstrated on the dispersion site plan he provided that he met the
    dispersion requirements.  Id. at 7-8.  Neither the site plan provided by the applicant nor the DPD project

24  summary indicates that a review of permitted uses was conducted at any time before that task was
    finally accomplished by Mr. McKim in August 2009.  When plaintiff's counsel contacted the City in

25  July, she was not told that her client's application had been denied.  Rather, the City agreed to accept the

26  application when offered the third time.  Had the City actually made a determination on the merits of

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT       -7-

1    The extent of the City's unconstitutional delay in conducting a dispersion analysis

2 and whether that delay caused plaintiff compensable injury cannot be ascertained from the

3 current record.  As the City points out, had it accepted and considered plaintiff's building permit

4 application in February 2009, it would have had a reasonable period of time in which to consider

5 the application and it ultimately would have denied it for the same reasons it did so in September

6 2009.[6]  Whether any damages arose from the period of unreasonable delay has not been

7 adequately briefed by the parties.

8    **II. INTERMEDIATE SCRUTINY**

9    A government regulation aimed at sexual or pornographic speech is constitutional

10 if it (a) is not a complete ban on such speech, (b) is predominately concerned with ameliorating

11 the secondary effects of such speech on the community, and (c) passes intermediate scrutiny

12 (*i.e.*, is narrowly tailored to serve a substantial governmental interest).  Tollis Inc. v. County of

13 San Diego, 505 F.3d 935, 939 (9th Cir. 2007).  Plaintiff argues that the version of SMC

14 23.47A.004.H that was in effect when it applied for a building permit did not pass constitutional

15 muster because it was not narrowly tailored to serve the government interest identified by the

16 City.

17    In the process of developing land use regulations for adult cabarets, the City

18 identified a number of negative secondary effects associated with such establishments, including

19 litter, noise, traffic, inappropriate signage, declining property values, and potential hazards for

20 children and personal safety.  See Decl. of Martha Lester (Dkt. # 21), Ex. A at 3-5.  The City

21 opted to address these effects by preventing adult cabarets from crowding together in one area

22 and by ensuring a sizeable buffer between cabarets and any facility in which children are likely

23

24 plaintiff's application in February 2009, the parties and the Court certainly should have and would have
been informed of that fact at some point before oral argument was held in May 2011.

25

26    [6] As of mid-January, the neighborhood had already identified the inconsistent uses that formed
the basis of the denial six months later.  Reply (Dkt. # 79) at 18.

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT          -8-

1  to congregate.  This method of addressing the negative secondary effects of adult uses – through

2  dispersal – has been approved by the Supreme Court in a number of cases.  See, e.g., City of

3  Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986).  Plaintiff does not take issue with the

4  dispersion concept and implicitly agrees that the City has a substantial interest in separating

5  adult uses from each other and from places where children congregate.  Plaintiff argues,

6  however, that former SMC 23.47A.004.H was too broad in that it prevented adult uses even

7  where surrounding facilities were not actually being used by children or other adult cabarets.

8          At the time plaintiff sought permission to remodel the building located at 10504

9  Aurora Avenue North, the City's dispersion ordinance prevented any new or expanded adult

10  cabaret from operating within 800 feet of a "property containing any community center; child

11  care center; school, elementary or secondary; or public parks and open space use" or within 600

12  feet of a "property containing any other adult cabaret."  In order to determine whether a property

13  "contained" an incompatible use, DPD reviewed its permit files to determine what uses were

14  legally authorized at the surrounding properties.  Plaintiff argues that, in order to satisfy the

15  "narrowly-tailored" prong of intermediate scrutiny, the City should have interpreted

16  "containing" to mean "actively engaged in" or "currently used as" lest plaintiff's protected

17  speech be curtailed even when there was no incompatible use actually occurring in the area.

18          The Court finds that the City's application of former SMC 23.47A.004.H was a

19  reasonable and measured effort to avoid the negative secondary effects associated with adult

20  uses.  While the reach of the ordinance could have been limited in any number of ways (such as

21  by precluding new adult businesses within a smaller distance of an inconsistent use and/or only

22  where the inconsistent use is both permitted and currently operating), it could also have been

23  expanded to preclude adult uses near any facility serving children, including places like

24  children's theaters, skate halls, and cinemas, and without regard to the permitting status of the

25  facility.  The political branches of government are best suited to draw these lines:  the judiciary

26  is tasked not with identifying the best way to advance the government's interest, but with

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT                    -9-

1    determining whether the scheme chosen by the City can withstand an intermediate level of

2    scrutiny.  Given the nature of the government's interest and the competing property interests at

3    stake, SMC 23.47A.004.H easily passes constitutional muster.

4              Under the City's zoning and land use scheme, a permit constitutes an on-going

5    authorization for a particular use without the need for further governmental approvals.[7]  Because

6    the child care facility and adult cabaret identified by DPD were legally permitted uses, allowing

7    plaintiff to open a new adult cabaret at the desired location posed the very real possibility that

8    the goals of the dispersion ordinance would be subverted.  In fact, the previously-permitted adult

9    cabaret has since resumed operations.  Had the City interpreted "containing" as "currently

10   operating," there would now be two adult cabarets operating within 600 feet of each other, a

11   situation which the City Council clearly sought to avoid when it enacted former SMC

12   23.47A.004.H.  On the flip side, consideration of "currently operating" facilities rather than

13   lawfully permitted facilities would give the reviewing government official considerable

14   discretion (and the surrounding neighborhood considerable power) to restrict First Amendment

15   speech.  An unpermitted childcare facility or, as was the case near 10507 Aurora Avenue North,

16   an unpermitted school operating in the vicinity of a proposed adult cabaret could preclude a later

17   adult use even though the earlier operation was not sanctioned.  The City's interpretation of

18   SMC 23.47A.004.H, which has now been explicitly incorporated into the ordinance, is a

19   reasonable attempt to balance multiple competing interests.  The Court finds that SMC

20   23.47A.004.H is narrowly-tailored to reduce the negative secondary effects of sexual or

21   pornographic speech on the community.[8]

22

23              [7]  In some instances an annual license may be needed to conduct a particular business, but that

24   approval process is separate from the building and land use codes at issue in this litigation.

25              [8]  The Court finds plaintiff's statutory construction arguments unpersuasive.  The City's

26   interpretation of the word "containing" is reasonable in the context of SMC 23.47A.004.H, and the rule
     of *in pari materia* is inapplicable where, as here, the regulatory language differs in material respects.

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT              -10-

1    Finally, plaintiff asserts that the dispersion criteria are unconstitutionally vague
2  because "containing" is not defined in the ordinance.  Vagueness challenges to undefined but
3  commonly understood terms are rarely successful.  See Comite de Jornaleros de Redondo Beach
4  v. City of Redondo Beach, 607 F.3d 1178, 1194 (9th Cir. 2010); Gospel Missions of Am. v. City
5  of Los Angeles, 419 F.3d 1042, 1047-48 (9th Cir. 2005).  Because we are "[c]ondemned to the
6  use of words, we can never expect mathematical certainty from our language."  Grayned v. City
7  of Rockford, 408 U.S. 104.110 (1972).  In the context of the City's building permit and land use
8  scheme, a person of ordinary intelligence would have fair notice that permitted uses, even if not
9  currently operating, would have to be taken into account when applying the dispersion criteria.
10  See Holder v. Humanitarian Law Project, __ U.S. __, 130 S. Ct. 2705, 2720 (2010) (in order to
11  withstand a vagueness challenge, the statute must provide "a person of ordinary intelligence fair
12  notice of what is prohibited.") (quoting United States v. Williams, 553 U.S. 285, 304 (2008)).
13  Even if the word "containing" is taken out of its narrowing context so that it could be disputed
14  based on the temporal distinction drawn by plaintiff, the City has construed the ordinance in a
15  reasonable manner that avoids all subjective judgments.  Plaintiff's vagueness argument
16  therefore fails.

17                                  **CONCLUSION**

18    For all of the foregoing reasons, plaintiff's motion for partial summary judgment
19  (Dkt. # 68) and defendant's cross-motion (Dkt. # 69) are GRANTED in part and DENIED in
20  part.  The dispersion requirements of SMC 23.47A.004.H are constitutional on their face.  The
21  ordinance was applied unconstitutionally, however, when the City refused to accept plaintiff's
22  building permit application in February of 2009, thereby barring plaintiff's protected speech
23  without evaluating the time, place, and manner in which that speech would be offered.  Whether
24  this delay caused plaintiff any cognizable injury cannot be determined on the existing record.

25

26

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT              -11-

1    Dated this 25th day of May, 2011.

2

3

4    Robert S. Lasnik
     United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SECOND ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT          -12-